UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GW HOLDINGS GROUP, LLC, a New York Limited    :    Case No.: 18-cv-4997
Liability Company,      :

                Plaintiff,    :

                        :    __COMPLAINT__

     - against -    :

US HIGHLAND, INC., a Nevada Corporation    :

               Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiff, GW Holdings Group, LLC, by its undersigned attorneys, for their complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.    This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities and related convertible note agreements. After entering into negotiated, arms-length agreements, for which defendant US Highland, Inc. ("Highland") received valuable consideration, Highland breached the agreements in numerous ways, including by becoming delinquent with its filings with the Securities and Exchange Commission and failing to honor certain notices of conversion to convert the note into shares of stock. Because of defendant's failure to honor the agreements, plaintiff is currently unable to convert the notes into the bargained for shares of stock. Accordingly, plaintiff seeks the relief set forth herein.

**PARTIES**

2.  Plaintiff GW Holdings Group, LLC ("GW" or "plaintiff") is a limited liability company duly organized under the laws of the State of New York and having a place of business located at 137 Montague Street, Brooklyn, New York.

3.  The members of GW reside in New York and California.

4.  For purposes of diversity, GW is a citizen of New York and California.

5.  Upon information and belief, defendant US Highland, Inc. ("Highland") is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business located at 3500 Lennox, Suite 1500, Atlanta, Georgia.

6.  For purposes of diversity, Highland is a citizen of Nevada.

7.  Accordingly, there is complete diversity of citizenship.

**JURISDICTION AND VENUE**

8.  The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.  This Court has supplemental jurisdiction of plaintiff's various state law claims pursuant to 28 U.S.C. section 1367(a).

10.  Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and defendant consented to jurisdiction and venue in the Southern District of New York.

**FACT COMMON TO ALL CLAIMS FOR RELIEF**

11.  On or about May 17, 2016 after arm's-length negotiations, HIGHLAND and GW executed a Securities Purchase Agreement (the "First SPA").

2

12.     The First SPA provided, inter alia, for the purchase of a Convertible Redeemable Promissory Note from defendant to GW, in the amount of $55,000.00 (the "First Note"). A true and correct copy of the First Note is attached hereto as Exhibit A.   A true and correct copy of the First SPA is annexed as Exhibit B.

13.     In accordance with the First Note, Highland was required to:

> reserve 42,000,000 shares of Common Stock for conversions under this Note (the "Share Reserve"). The investor shall have the right to periodically request that the number of Reserved Shares be increased so that the number of Reserved Shares at least equals 400% of the number of shares of Company common stock issuable upon conversion of the Note…At all times, the reserve shall be maintained with the Transfer Agent at four times the amount of shares required if the Note would be fully converted.

See Note, Par. 13.

14.     On or about May 17, 2016, Highland established a reserve in the amount of 42 million shares of stock with its transfer agent.

15.     On or about June 15, 2016 the share reserve was increased so that 83 million shares were held in reserve.

16.     However, in violation of the terms of each Note and SPA, Highland failed to remain current in its public filings with the Securities and Exchange Commission from the period of November 16, 2016 through February 15, 2018.

17.     On or about October of 2017, Highland approached GW and requested that it be permitted to release a portion of the shares being held in reserve in connection with its attempts to obtain additional financing.

18.     On or about October 9, 2017, the parties executed an agreement whereby GW agreed to release 40 million of the share from the escrow reserve. In connection with this agreement, Highland agreed that "When UHLN has achieved good standing in Oklahoma and fully

reporting with the SEC, UHLN will authorize shares sufficient to enable GW to convert all outstanding debt in full."

19.     On or about February 2, 2018, the parties entered into a "leak out agreement" permitting GW to trade the greater of $2000 or 25% of the daily volume of Highland's shares of stock.

20.     On or about February 15, 2018, Highland finally became current with its public filings.

21.     On or about March 15, 2018, after arm's-length negotiations, Highland and GW executed an additional Securities Purchase Agreement (the "Second SPA").

22.     The Second SPA provided, inter alia, for the purchase of a Convertible Redeemable Promissory Note to GW, in the amount of $36,750.00 (the "Second Note"). A true and correct copy of the Second Note is attached hereto as Exhibit C.   A true and correct copy of the Second SPA is annexed as Exhibit D.

23.     In accordance with the Second Note, Highland was required to:

reserve 65,000,000 shares of Common Stock for conversions under this Note (the "Share Reserve"). The investor shall have the right to periodically request that the number of Reserved Shares be increased so that the number of Reserved Shares at least equals 400% of the number of shares of Company common stock issuable upon conversion of the Note…At all times, the reserve shall be maintained with the Transfer Agent at four times the amount of shares required if the Note would be fully converted.

See Note, Par. 13.

24.     On or about March 15, 2016, Highland established a reserve in the amount of 65 million shares of stock with its transfer agent.

25.     On or about March 21, 2018 GW issued a notice of conversion, seeking to convert a portion of the First Note into shares of stock.  Highland honored this notice of conversion, but

used a portion of the stock reserve set up for the Second Note as part of the shares it provided in connection with this notice of conversion.

26.     On or about April 27, 2018, GW issued an additional notice of conversion.  This time, Highland's CEO, Everett Dickson, claims that "there is no reserve" and that Highland will not honor the notice of conversion.

27.     However, after discussion with GW and its counsel, Mr. Dickson claims that he "forgot" that GW has a reserve of shares, and Highland ultimately permitted the conversion.

28.     On or about May 10, 2018, Mr. Dickson informed GW that he will "block" future conversions.

29.     By letter dated May 11, 2018 Highland's attorney, Antony Newton, instructed the transfer agent not to honor conversion notices and asserted that the past conversion were improper. The letter falsely claimed that Highland was not "eligible to issue shares pursuant to Rule 144", and that the conversions were otherwise improper.  Mr. Newton's letter further stated that: "I am instructing Columbia Stock Transfer not to issue further shares pursuant to (i) a share reservation under a Convertible Note that is not yet mature, (ii) any instruction letter referencing a share reservation under Rule 144 of the Act, and (iii) a legal opinion referencing Section 4(a)(1) of the Act."

30.     Aside for being directly contrary to the various agreements entered into by the parties, this letter is particularly notable given that in July of 2017, Mr. Newton had attempted to sell GW a Note and SPA issued by Highland that Mr. Newton personally owned.

31.     On or about May 14, 2018, GW requested that Highland increase the number of shares in reserve, in accordance with Par. 13 of each Note. Highland refused to increase the reserve, in violation of the terms of each Note and SPA.

32.     On or about May 11, 2018 GW submitted a notice of conversion which Highland refuses to honor. Mr. Dickson refused to honor this notice of conversion, and instead, provided GW with a copy of the May 11, 2018 letter that Mr. Newton had sent to the transfer agent.

33.     On May 15, 2018, GW provided the transfer agent with correspondence from GW's attorney explaining why Highland's refusal to honor the conversion notices was wrongful.

34.     On May 22, 2018, GW submitted an additional notice of conversion.

35.     On May 24, 2018, GW and was informed by the transfer agent that Highland had switched transfer agent.  Highland failed to provide notice of its change of transfer agent, in violation of the terms of the various agreements.

36.     GW proceeded to reach out to the new transfer agent, only to be informed that they had no books and records and could not process any conversion notice.

37.     On May 25, 2018, GW again reached out to the transfer agent and Highland to attempt to get the conversion notice processed.  Mr. Dickson affirmatively stated that he would not honor the conversion notice.

38.     On May 29, 2018, GW issued another conversion notice.

39.     Once again, Mr. Dickson stated that he would not honor any conversion notices and refused to honor the May 29, 2018 conversion notice as well.

40.     Section 4(a) of the First Note and the Second Note each provide as follows:

The Holder of this Note has the option, upon the issuance date of the stock, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") at a price ("Conversion Price") for each share of Common Stock equal to 45% discount of the lowest trading price of the Common Stock as reported on the National Quotations Bureau  OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange"), for the twenty prior trading days…

41.     Section 4 of the First Note and the Second Note provide that Highland is required to deliver the stock within three business days of receipt of a Notice of Conversion, and that its obligation to do so is absolute and unconditional.

42.     Section 9 of the First Note and Second Note provides for the events of default. Among other things, Section 9(k) provides that there is a default if: "The Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion."

43.     Likewise, Section 9(l) of the First Note and the Second Note provides for a breach where "The Company shall not replenish the reserve set forth in Section 13, within 3 business days of the request of the Holder. If the Company does not replenish, the request of the Holder then the conversion discount set forth in Section 4(a) shall be increased from a 45% conversion discount to a 60% conversion discount."

44.     Section 9(m) of the First Note and the Second Note provide for a breach where: "The Company shall not be "current" in its filings with the Securities and Exchange Commission."

45.     Section 9(c) of the First Note and the Second Note provides for a breach where: "The Company shall fail to perform or observe, in any respect, any covenant, term, provision, condition, agreement or obligation of the Company under this Note or any other note issued to the Holder."

46.     Section 9(h) of the First Note and the Second Note provides for a breach where: "The Company shall have defaulted on or breached any term of any other note of similar debt instrument into which the Company has entered and failed to cure such default within the appropriate grace period

47.     Section 9 of the First Note and the Second Note provides for the consequence of an event of default, as do certain provisions of the First SPA and the Second SPA, including the amounts due, default interest, and the liquidated damages that are due in the event of a default.

48.     The liquidated damages provisions of the First Note and the Second Note were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a breach.

49.     Contrary to its representations, warranties, and covenants in the various agreements, Highland became delinquent in its filings thereby materially breaching the terms of the various agreements.

50.     Highland also refused to honor the conversion notices submitted on May 22, 2018 and May 29, 2018, in violation of the terms of the agreements.

51.     Highland also changed transfer agents without informing GW and failed to establish the required reserve of shares.

52.     Accordingly, for the foregoing reasons, Highland is in material breach of the various agreements.

53.     Damages from Highland's failure to comply with the various agreements are inherently uncertain and difficult to calculate.  Because of Highland's actions, plaintiff has been unable to effectuate conversions of the Note.

54.     Since the parties entered in the transactions described above, Highland's Stock price has ranged from a high of $0.0119 per share on May 20, 2016, to a low of $0.0002 per share on October 25, 2016. Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is impossible to discern with any accuracy precisely when

GW would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is impossible.

55.     As such, without injunctive relief, Highland is unlikely to satisfy any monetary judgment and GW will suffer irreparable harm

56.     All notices and prerequisites to bringing this action, if any, have been complied with or were waived.

**FIRST CLAIM FOR RELIEF**
**(<u>SPECIFIC PERFORMANCE</u>)**

57.     GW realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

58.     Pursuant to the agreements between the parties, Highland is obligated to remain current with its SEC filings, and to permit the conversion of the First Note and the Second Note into shares of Highland stock, and to establish and maintain a share reserve.

59.     Despite its obligation to do so, Highland has failed to remain current with its SEC filings, to permit the conversion of the First Note and the Second Note into shares of Highland stock, to establish and maintain a share reserve, and has failed to honor the notices of conversion sent by plaintiff.

60.     As a result of such refusal by Highland, GW has suffered damages.

61.     Among other things, GW is ordinarily entitled to convert each of the Notes until it owns 9.9 % of Highland shares. It may then sell the shares, and again convert the Notes until it once again owns 9.9% of shares of Highland, sell the shares, and keep repeating the process until each Note is entirely converted.  By failing to comply with its obligations, Highland prevented GW from exercising these bargained for rights under the terms of the agreements.

9

62.     GW has no adequate remedy at law.

63.     In the absence of injunctive relief and specific performance, GW will suffer irreparable harm.

64.     Section 5(l) of the First SPA and the Second SPA provides that:

Remedies. The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Purchaser by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the Company acknowledges that the remedy at law for a breach of its obligations under this Agreement will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Agreement, that the Purchaser shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required.

65.     GW requests, therefore, that the Court enter an order requiring Highland to specifically perform the relevant agreements, including the First Note and First SPA, the Second Note and Second SPA, to establish and maintain a share reserve in accordance with the agreements, to honor the notice of conversion sent by plaintiff, and to convert same into shares of unrestricted stock in accordance with the agreements.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

66.     GW realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

67.     Each of the agreements entered into by plaintiff and Highland, including the First Note and First SPA, the Second Note and Second SPA, are valid and binding agreements.

68.     As set forth more fully above, Highland breached the agreements, by among other things, failing to remain current with its SEC filings, and refusing to permit the conversion of one or more of the notes into shares of Highland stock and failing to establish and maintain a share reserve.

69.     Highland's conduct constitutes a breach and default under the terms of each of the agreements.

70.     Plaintiff has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

71.     Highland's breach and default are governed by New York law under the terms of the agreements.

72.     GW is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $225,000.00, plus liquidated damages and default interest, and damages as provided for in the agreements and by law.

### THIRD CLAIM FOR RELIEF
### (<u>PERMANENT INJUNCTION</u>)

73.     GW realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

74.     Pursuant to its obligations under the relevant agreements, Highland is obligated to remain current in its filings with the SEC, to honor any notice of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

75.     Despite its obligation to do so, Highland has failed remain current in its filings with the SEC, to honor notices of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

76.     As a result of such refusal by Highland, GW has suffered damages.

77.     Among other things, GW is ordinarily entitled to convert each of the Notes until it owns up to 9.9% of Highland shares. It may then sell the shares, and again convert the Notes until it once again owns 9.9% of shares of Highland, sell the shares, and keep repeating the process until each Note is entirely converted.  By failing to honor its obligations under the agreements, as set forth above, Highland prevented GW from exercising these bargained for rights under the terms of the agreements.

78.     GW has no adequate remedy at law.

79.     In the absence of injunctive relief, GW will suffer irreparable harm.

80.     Additionally, Highland consented to an injunction when entering into the agreements.

81.     Section 5(l) of the First SPA and the Second SPA provides that:

Remedies. The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Purchaser by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the  Company acknowledges that the remedy at law for a breach of its obligations under this Agreement will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Agreement, that the Purchaser shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required.

82.     GW requests, therefore, that the Court enter an Order enjoining and requiring Highland to remain current in its filings with the SEC, to honor notices of conversion sent by

plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements.

## FOURTH CLAIM FOR RELIEF
### (<u>COSTS, EXPENSES & ATTORNEYS FEES</u>)

83.     GW realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

84.     In accordance with the agreements between the parties, Highland agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by GW in collecting any amount under the First Note and the Second Note or breach of any of the agreements.

85.     First, §7 of the First Note and Second Note provides that: "The Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note."

86.     Additionally, §9 of the First Note and Second Note, provides that "If the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging an attorney, then if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such ac- tion or proceeding.."

87.     Therefore, GW is entitled to an award against defendants for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## <u>CLAIM FOR RELIEF</u>

**WHEREFORE**, Plaintiff GW seeks judgment against Defendants as follows:

i.  On the First Claim for Relief, GW requests that the Court enter an Order requiring Highland to specifically perform the relevant agreements, including the First Note and First SPA, the Second Note and Second SPA, to establish and maintain a share reserve in accordance with the agreements, to honor the notice of conversion sent by plaintiff, and to convert same into shares of unrestricted stock in accordance with the agreements; and

ii.  On the Second Claim for Relief, for damages in an amount to be determined, but in any event in excess of $225,000.00, plus liquidated damages and default interest; and

iii.  On the Third Claim for Relief, issuing an Order enjoining and requiring Highland to remain current in its filings with the SEC, to honor notices of conversion sent by plaintiff, to establish and maintain a share reserve, and to comply with the terms of the various agreements; and

iv.  On the Fourth Claim for Relief, for an award of GW's costs and expenses in prosecuting this action, including reasonable legal fees; and

v.  For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: June 5, 2018
New York, New York

LAW OFFICE OF JEFFREY FLEISCHMANN PC
By: /s/Jeffrey Fleischmann
Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff GW Holdings Group, LLC*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com