**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
+----------------------------------+
| USDC SDNY                        |
| DOCUMENT                         |
| ELECTRONICALLY FILED             |
| DOC #: _____         |
| DATE FILED: 09/29/2020           |
+----------------------------------+
```

```
------------------------------- X
GW HOLDINGS GROUP, LLC,          :
                                 :
                 Plaintiff,      :
                                 :
     -against-                   :
                                 :
CRUZANI, INC., f/k/a US          :
Highland, Inc.,                  :
                                 :
                 Defendant.      :
------------------------------- X
```

No. 18 Civ. 4997 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF GW HOLDINGS GROUP, LLC:
    Jeffrey Fleischmann
    LAW OFFICE OF JEFFREY FLEISCHMANN PC

FOR DEFENDANT CRUZANI, INC.:
    Matthew Tracy
    WINGET, SPADAFORA & SCHWARTZBERG, LLP

**JOHN F. KEENAN, United States District Judge:**

Plaintiff GW Holdings Group, LLC ("Plaintiff") brings this action against Defendant Cruzani, Inc. f/k/a US Highland, Inc. ("Defendant") asserting causes of action for specific performance, breach of contract, and a permanent injunction arising out of Defendant's conduct in connection with certain agreements to purchase securities and related convertible notes. Before the Court are (1) Defendant's motion to dismiss the First Amended Complaint ("the FAC"); (2) Plaintiff's pre-discovery motion for partial summary judgment; and (3) Defense Counsel's request to withdraw. For the reasons set forth below, the motion to dismiss is DENIED; the motion for partial summary

1

judgment is DENIED without prejudice to renew following the
close of discovery; and the motion to withdraw is GRANTED.

## I. Background

The following is taken from the FAC, (ECF No. 44),
Plaintiff's Rule 56.1 Statement, (ECF No. 53 ("Pl.'s 56.1")),
Defendant's response to Plaintiff's Rule 56.1 Statement, (ECF
No. 68 ("Def.'s 56.1")), and the admissible evidence the parties
submitted.  Unless otherwise noted, where one party's 56.1
Statement is cited, the other party does not dispute the fact
asserted, has offered no admissible evidence to refute that
fact, or merely objects to inferences drawn from that fact.  In
ruling on the motion to dismiss, the Court has considered
Defendant's memorandum in support of dismissal, (ECF No. 48),
Plaintiff's opposition, (ECF No. 49), and Defendant's reply,
(ECF No. 69).  In ruling on the motion for summary judgment, the
Court has considered Plaintiff's memorandum in support of
summary judgment, (ECF No. 54), Defendant's opposition, (ECF No.
70), Plaintiff's reply, (ECF No. 72), and the admissible
evidence and 56.1 Statements the parties submitted.

### A. Factual Background

On May 17, 2016, Plaintiff and Defendant executed a
Securities Purchase Agreement ("the First SPA"), pursuant to
which Plaintiff purchased from Defendant a Convertible
Redeemable Promissory Note ("the First Note") in the amount of

$55,000.  (Pl.'s 56.1 ¶ 1.)  Section 4(a) of the First Note provided Plaintiff with "the option, upon the issuance date of the stock, to convert all or any amount of the principal face amount of this Note then outstanding into shares of [Defendant's] common stock."  (First Note § 4(a), ECF No. 51-1.) Section 13 of the First Note obligated Defendant to "reserve 42,000,000 shares of Common Stock for conversions under this Note," but allowed Plaintiff "the right to periodically request that the number of Reserved Shares be increased" so that the reserve equaled a certain percentage of the number of shares issuable upon conversion of the note.  (Id. § 13.)  The First Note further provided that "[a]t all times, the reserve shall be maintained with the Transfer Agent at four times the amount of shares required if the Note would be fully converted."  (Id.) And, among other requirements, obligated Defendant to (1) deliver the stock within three business days of Defendant's receipt of a notice of conversion; (2) "replenish the reserve set forth in Section 13, within [three] business days" of a request by Plaintiff; and (3) be "current" in its filings with the Securities and Exchange Commission ("the SEC"), all of which were contractually defined "Events of Default" that would permit Plaintiff to "consider this Note immediately due and payable, without presentment, demand, protest or (further) notice of any kind (other than notice of acceleration), . . . , and

[Plaintiff] may immediately, and without expiration of any
period of grace, enforce any and all of [its] rights and
remedies provided herein or any other rights or remedies
afforded by law." (Id. §§ 4(a), 9.)

Simultaneous to the execution of the First Note and First
SPA, on May 17, 2016, Defendant executed an agreement ("the
First TA Letter") directing its transfer agent to establish a 42
million share reserve for Plaintiff's benefit to permit
Plaintiff's conversion of the First Note into shares of stock.
(Pl.'s 56.1 ¶ 3.)  The First TA Letter further explained that
"[t]he amount of Common Stock so reserved may be increased, from
time to time, by written instructions of [Defendant] and
[Plaintiff]." (The First TA Letter at 1, ECF No. 51-3.)  And,
"[o]nce the reserve shares have been issued, [the transfer
agent] shall have no further duty or obligation to issue shares
until [Defendant] and [Plaintiff] have increased the reserve."
(Id.)  On June 15, 2016, Defendant executed a second agreement
with the transfer agent pursuant to which the share reserve was
increased to 83 million shares (together with the First TA
Letter, "the TA Letters").  (Pl.'s 56.1 ¶ 4.)

From November 16, 2016, to February 15, 2018, Defendant
violated the terms of the First Note and First SPA by failing to
remain current in its public filings with the SEC.  (Id. ¶ 5.)
Nevertheless, on March 15, 2018, Plaintiff and Defendant

executed an additional Securities Purchase Agreement (the "Second SPA"), which provided for the purchase by Plaintiff from Defendant of a second Convertible Redeemable Promissory Note ("the Second Note") in the amount of $36,750. (Id. ¶ 7.)  The terms of the Second Note were nearly identical to the First Note, however, section 4(a) of the Second Note provided Plaintiff with "the option, upon the issuance date of the note, to convert . . . this Note . . . into shares of [Defendant's] common stock." (Second Note § 4(a), ECF No. 51-4 (emphasis added).)  Section 13 of the Second Note obligated Defendant to establish a 65 million share reserve for conversions pursuant to the note, and once again provided Plaintiff with the right to periodically request that the number of reserved shares be increased. (Id. § 13.)

On March 21, 2018, Plaintiff issued a notice of conversion seeking to convert a portion of the First Note into shares of Defendant's stock. (Pl.'s 56.1 ¶ 9.)  Defendant honored Plaintiff's notice of conversion, which necessitated using a portion of the stock reserve set aside for the Second Note because Plaintiff's conversion pursuant to the First Note depleted the First Note's reserve. (Id.; Decl. of Conrad Huss ¶ 9, ECF No. 66.)  Defendant states that it was not obligated to honor the notice of conversion, but it did so at that time as an accommodation to Plaintiff. (Def.'s 56.1 ¶ 9.)

On April 27, 2018, Plaintiff submitted a second notice of conversion which, Defendant asserts, created a problem because Plaintiff had depleted the First Note's reserve in its prior conversion, and Plaintiff had no right to conversion under the Second Note at that time. (Decl. Conrad Huss ¶ 10.) As an accommodation to Plaintiff, Defendant honored the conversion on or about May 10, 2018, with the provision that no further conversions would take place under the First Note. (Id.)

On May 11, 2018, Defendant's attorney instructed its transfer agent not to honor any future conversion notices by Plaintiff and asserted that Plaintiff's prior conversions were improper because, pursuant to the Securities Act of 1933, Defendant was not permitted to make such issuances to Plaintiff. (Pl.'s 56.1 ¶¶ 11-12; Letter, ECF No. 51-6.) On May 14, 2018, Plaintiff sent an email to Defendant's transfer agent in which Plaintiff requested its reserve be increased to approximately 159 million shares as "[t]his is the amount of shares we would need to convert our notes as of today." (Pl.'s 56.1 ¶ 15; Email, ECF No. 51-7.) Plaintiff's request was never transmitted to Defendant. (Def.'s 56.1 ¶¶ 15-16.) The following day, Plaintiff provided the transfer agent with correspondence from Plaintiff's attorney which explained why Plaintiff believed Defendant's legal argument was without merit and why Defendant's refusal to honor the conversion notices was a breach of the

terms of the First Note.  (Pl.'s 56.1 ¶ 17; Letter, ECF No. 51-8.)

On May 22, 2018, Plaintiff submitted a notice of conversion (the "First NOC") to Defendant seeking to convert a principal amount of $8,790 into approximately 28 million shares of Defendant's common stock.  (Pl.'s 56.1 ¶ 18; Notice of Conversion, ECF No. 51-9.)  Two days later, Defendant's transfer agent informed Plaintiff that Defendant had switched transfer agents.  (Pl.'s 56.1 ¶ 19; Email, ECF No. 51-10.)  Plaintiff alleges that it contacted the new transfer agent, only to learn that the new transfer agent had no books and records and could not process any conversion notice.  (Pl.'s 56.1 ¶ 20; but see Def.'s 56.1 ¶ 20 (arguing this factual assertion is inadmissible hearsay).)

On May 25, 2018, Plaintiff again contacted Defendant's former transfer agent and Defendant regarding the First NOC.  (Pl.'s 56.1 ¶ 21.)  Defendant responded that "[n]o conversions are being processed," and explained that Defendant's attorney would reach out to Plaintiff's attorney that afternoon.  (Email, ECF No. 51-11.)  On May 29, 2018, Plaintiff issued yet another conversion notice (the "Second NOC"), this time seeking to convert the remaining principal and interest due on the First Note into approximately 18 million shares of Defendant's common stock.  (Pl.'s 56.1 ¶ 22; Notice of Conversion, ECF No. 51-12.)

Defendant refused to honor the conversion notice and stated,
"[n]o conversions are being honored.  This has been clearly
communicated, as have the legal reasons why."  (Pl.'s 56.1 ¶ 23;
Email, ECF No. 51-13.)

### B.  Procedural History

On June 5, 2018, Plaintiff initiated this action by filing
a complaint for specific performance, breach of contract, a
permanent injunction, and recovery of Plaintiff's costs,
expenses, and attorneys' fees.  (ECF No. 1.)  The Complaint
alleged that the Court had diversity jurisdiction pursuant to 28
U.S.C. § 1332(a), however Plaintiff acknowledged that its losses
were "impossible" to calculate.  (Compl. ¶ 54.)  Nevertheless,
Plaintiff estimated its breach of contract damages to be "in
excess of $225,000."  (Id. ¶ 72.)

On July 11, 2018, Defendant moved to dismiss the Complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of
subject matter jurisdiction) and 12(b)(6) (failure to state a
claim upon which relief may be granted).  (ECF Nos. 11, 12.)  On
March 13, 2019, the Court granted Defendant's motion, holding
Plaintiff failed to adequately allege the requisite amount in
controversy necessary to invoke diversity jurisdiction.  (ECF
No. 27.)  The following day, Plaintiff filed a notice of appeal.
(ECF No. 29.)

On December 16, 2019, the Second Circuit ruled that
Plaintiff had met its initial burden of pleading damages.  (ECF
No. 37.)  The Court scheduled a conference with the parties,
during which Plaintiff sought leave to file an amended complaint
and to move for partial summary judgment prior to discovery, and
Defendant requested leave to renew its motion to dismiss for
failure to state a claim.  The Court granted the parties'
requests, Plaintiff filed the FAC on January 3, 2020, (ECF No.
44), Defendant filed its motion to dismiss on January 27, 2020,
(ECF No. 47), and Plaintiff filed its motion for partial summary
judgment on February 20, 2020, (ECF No. 50).

## II.  Legal Standards

### A.  Rule 12(b)(6) Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only a
short and plain statement of the claim showing that the pleader
is entitled to relief, in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests.
Consequently, to survive a motion under Rule 12(b)(6), a
complaint does not need to contain detailed or elaborate factual
allegations, but only allegations sufficient to raise an
entitlement to relief above the speculative level." Keiler v.
Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014)
(citations omitted).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In doing so, the Court must accept as true all factual allegations in the complaint, and it must draw all reasonable inferences in the plaintiff's favor. Lynch v. City of New York, 952 F.3d 67, 74–75 (2d Cir. 2020). On a motion to dismiss, a court "should resolve any contractual ambiguities in favor of the plaintiff." Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

### B. Rule 56 Motion for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 123–24 (2d Cir. 2014).

> There is no genuine dispute as to any material fact where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material).

Union Capital LLC v. Vape Holdings Inc., No. 16 Civ. 1343 (RJS), 2017 WL 1406278, at *3 (S.D.N.Y. Mar. 31, 2017) (internal citations and quotation marks omitted).

"It is the movant's burden to show that no genuine factual dispute exists." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To survive a summary judgment motion, a nonmovant "need[s] to create more than a 'metaphysical' possibility that his allegations [a]re correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial.'" Wrobel v. Cty. of Erie, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). Although the nonmoving party "may not merely rest on the allegations or denials of his pleading," Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009), "[i]n determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant," Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). At

this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Brod, 653 F.3d at 164 (quotation marks omitted). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quotation marks omitted).

## III. Defendant's Motion to Dismiss

The FAC alleges that Defendant breached the First and Second SPAs and Notes by failing to remain current with its SEC filings, refusing to honor the First and Second NOCs, and failing to maintain the required reserve of shares. (FAC ¶ 77.) Accordingly, Plaintiff argues, it is entitled to (1) seek specific performance and injunctive relief because Defendant refuses to comply with its obligations under the parties' agreements; and (2) seek an award of costs and fees because the First and Second Notes permit such reimbursements "which may be incurred by [Plaintiff] in collecting any amount due under th[e] Note[s]." (First Note § 7; Second Note § 7.)

Defendant counters that the FAC fails to state a claim for breach because Plaintiff does not allege ever making a formal request to Defendant to increase the First Note's reserve after Plaintiff's March 2018 conversion exhausted it. Accordingly, Defendant argues, Plaintiff does not plausibly allege that the

failure to honor the First and Second NOCs constitutes breach because when Plaintiff submitted the notices of conversion, there was no longer any stock available to process the requests. The Court disagrees.

Drawing all reasonable inferences in favor of Plaintiff, as the Court must on a Rule 12(b)(6) motion to dismiss, the FAC plausibly alleges Defendant's violation of the provision requiring, "[a]t all times, the reserve shall be maintained with the Transfer Agent at four times the amount of shares required if the Note would be fully converted." (First Note § 13.) Accordingly, Defendant's refusal to timely satisfy the First and Second NOCs plausibly alleges breach of Plaintiff's right "to convert all or any amount of the principal face amount of [the First Note] then outstanding into shares of [Defendant's] common stock." (Id. § 4(a).)

## IV. Plaintiff's Motion for Partial Summary Judgment

Prior to the parties engaging in any discovery, Plaintiff filed a motion seeking "partial summary judgment on the claims set forth in the amended complaint." (Notice of Mot., ECF No. 50.) Plaintiff does not identify the specific claims on which it seeks summary judgement, but it appears that Plaintiff seeks such relief on its second and fourth claims for breach of contract and costs and fees, respectively.

13

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).  However, "[c]ourts generally are reluctant to grant summary judgment when the non-moving party has not had an adequate opportunity for discovery, but this by no means is a prohibition on the entry of judgment prior to discovery." EMA Fin., LLC v. Joey New York, Inc., No. 17 Civ. 9706 (VSB), 2019 WL 4600863, at *4 (S.D.N.Y. Sept. 22, 2019) (internal quotation marks omitted); but see Great Wall De Venezuela C.A. v. Interaudi Bank, 117 F. Supp. 3d 474, 492–93 (S.D.N.Y. 2015) ("While [Rule 56] allows a party to move for summary judgment before discovery is complete, such a motion is successful '[o]nly in the rarest of cases' because '[t]he nonmoving party must have had the opportunity to discover information that is essential to [its] opposition to the motion for summary judgment.'") (second, third, and fourth brackets in original) (quoting Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)).

Plaintiff argues that no genuine dispute exists—and summary judgement is appropriate—on the FAC's allegations of breach: namely, Defendant's failure to (1) remain current with its SEC filings, (2) honor the First and Second NOCs, and (3) establish

and maintain the required reserve of shares for Plaintiff's
conversion pursuant to the First Note.[1]  The Court disagrees.

"In order to recover from a defendant for breach of
contract, a plaintiff must prove, by a preponderance of the
evidence, (1) the existence of a contract between itself and
that defendant; (2) performance of the plaintiff's obligations
under the contract; (3) breach of the contract by that
defendant; and (4) damages to the plaintiff caused by that
defendant's breach." Diesel Props S.r.l. v. Greystone Bus.
Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).  "[T]he mere
violation of a contractual provision, standing alone, does not
constitute a 'breach' under New York law.  Plaintiff also must
demonstrate that it suffered damages as a result of the
violation." Zamora v. Morphix Co., Ltd., No. 15 Civ. 6532 (KBF),
2018 WL 1033228, at *7 (S.D.N.Y. Feb. 21, 2018) (vacating jury
verdict and granting judgment as a matter of law where there was
insufficient evidence to find that damages were suffered as a

---

[1] Plaintiff's motion also argues that Defendant breached the parties'
agreements by switching transfer agents, but Plaintiff does not
identify the relevant portion of an agreement establishing this as a
breach.  Indeed, the provision Plaintiff cites applies "in the event
that the Transfer Agent resigns," which, construing the facts in the
light most favorable to Defendant, is not what occurred. See Brod 653
F.3d at 164; see also Ellington Credit Fund, Ltd. v. Select Portfolio
Servicing, Inc., 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("[A]
plaintiff must identify what provisions of the contract were breached
as a result of the acts at issue.").

result of the breach) (emphasis in original), aff'd, 764 F.
App'x 96 (2d Cir. 2019).

"[T]he initial question for the court on a motion for
summary judgment with respect to a contract claim is 'whether
the contract is unambiguous with respect to the question
disputed by the parties.'" Law Debenture Tr. Co. of New York v.
Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (quoting
Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d
76, 83 (2d Cir. 2002)). "Ambiguity is determined by looking
within the four corners of the document, not to outside
sources." JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir.
2009) (quoting Kass v. Kass, 696 N.E.2d 174, 180 (N.Y. 1998)).

Defendant argues that genuine disputes exist regarding
breach.  The Court agrees.

First, Plaintiff's allegations concerning Defendant's
failure to remain current with the SEC fail to satisfy the
damages element of a breach of contract claim.  Here,
Plaintiff's damages arise out of Defendant's refusal to process
the First and Second NOCs in May 2018—Defendant's failure to
remain current in its public filings, however, which occurred
between November 2016 and February 2018 is unrelated to
Plaintiff's purported damages.  Indeed, Plaintiff did not take
any action in response to this "Event of Default" which,
pursuant to section 9 of the First Note, would have required

Plaintiff to submit a notice of acceleration.  (First Note § 9
(stating that, if a designated "Event of Default" occurs, "the
Holder may consider this Note immediately due and payable,
without presentment, demand, protest or (further) notice of any
kind (other than notice of acceleration)").  Further, Plaintiff
did not seek to convert any portion of the First Note until
March 2018, well after Defendant cured its failure to remain
current with the SEC. See Zamora, 764 F. App'x at 98 (affirming
dismissal of breach of contract claim where plaintiff failed to
introduce any evidence at trial "to support a finding that it
was damaged by [defendant's] technical breach").

Second, at least two genuine disputes exist regarding
Defendant's obligation to honor the First and Second NOCs: (1)
the text of the First Note, which ambiguously states that
Plaintiff had "the option, upon the issuance date of the stock,"
to convert the note's principal into Defendant's common stock,
(emphasis added); and (2) the legal arguments Defendant's
attorney advanced in the moment in denying Plaintiff's notices
of conversion—none of which arguments Plaintiff addressed in any
way in its summary judgment motion other than to casually assert
that they were false, (Pl.'s 56.1 ¶ 11); an assertion Defendant
expressly denies, (Def.'s 56.1 ¶ 11).  Accordingly, because
neither party has engaged in any discovery regarding the

parties' intent by the term "issuance date of the stock,"[2] and a genuine and wholly unaddressed dispute exists regarding whether the Securities Act of 1933 permitted Defendant to allow Plaintiff's conversions, summary judgment is not appropriate at this time. See Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 65 (2d Cir. 2010) (reversing grant of summary judgment where genuine issues of fact existed after "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought"); cf. Vape Holdings, 2017 WL 1406278, at *4 (granting summary judgement where defendant did not dispute that it breached the terms of the convertible redeemable note); Union Capital LLC v. 5BARZ Int'l Inc., No. 16 Civ. 6203 (KBF), 2016 WL 8794475, at *1 (S.D.N.Y. Oct. 5, 2016) (same).

Finally, a genuine dispute exists regarding whether Defendant's failure to replenish the First Note's share reserve constitutes breach. Here, section 13 of the First and Second

---

[2] In its reply, Plaintiff argues that the clause is not ambiguous and submits a "Leak Out Agreement" and "Reserve Release Agreement" in support. (Suppl. Decl. of Noah Weinstein, ECF No. 71.) While "[t]he local rules for this district do not expressly forbid consideration" of materials submitted on reply, "[o]ther districts disallow such materials." Valley Nat. Bank v. Oxygen Unlimited, LLC, No. 10 Civ. 5815 (GBD), 2010 WL 5422508, at *2 n.1 (S.D.N.Y. Dec. 23, 2010) (citing Dethrow v. Parkland Health Systems, 204 F.R.D. 102, 103 (N.D. Tex. 2001)). Accordingly, at this time, the Court will not consider Plaintiff's belatedly introduced materials without first giving Defendant the opportunity to address the inferences Plaintiff urges the Court to draw from them. Plaintiff may include such materials in a post-discovery summary judgment motion if it elects to bring one.

Notes provide that Plaintiff "shall have the right to periodically request that the number of Reserved Shares be increased . . . [and] [a]t all times, the reserve shall be maintained with the Transfer Agent at four times the amount of shares required if the Note would be fully converted." But the TA Letters are explicit that the share reserve "may be increased, from time to time, by written instructions of [Defendant] and [Plaintiff]," and that "[o]nce the reserve shares have been issued, [the transfer agent] shall have no further duty or obligation to issue shares until [Defendant] and [Plaintiff] have increased the reserve." (Emphasis added.) Plaintiff alleges that it requested Defendant increase the reserve, but Plaintiff offers no evidence that such a request was ever made to Defendant. Instead, Plaintiff offers an email it sent to Defendant's transfer agent—an email Defendant asserts it never received. Indeed, Plaintiff's assertion of breach is further belied by its email to the transfer agent, which simply requested "the amount of shares we would need to convert our notes as of today," not the "four times the amount of shares required" under the relevant provisions of the agreements Plaintiff now invokes. Further, section 9(l) of the First Note provides an "Event of Default" where Defendant "shall not replenish the reserve set forth in Section 13, within 3 business days of the request of [Plaintiff]," but, as with Plaintiff's

breach claim regarding Defendant's failure to remain current
with the SEC, Plaintiff does not allege its compliance with
section 9's requirement that it submit a notice of acceleration
before attempting to "enforce any and all of [Plaintiff's]
rights and remedies."  Accordingly, summary judgment is not
appropriate at this time. See Wilson, 625 F.3d at 65.

**V.  Defense Counsel's Request to Withdraw**

On May 26, 2020, while Defendant's motion to dismiss and
Plaintiff's motion for summary judgment ("the Motions") were
pending, counsel for Defendant filed a letter requesting leave
to withdraw because adversity had arisen between itself and
Defendant due to Defendant's refusal to pay outstanding legal
fees and expenses.  (ECF No. 63.)  Defense Counsel's letter
explained that Plaintiff's counsel did not object.  On June 3,
2020, the Court denied Defense Counsel's request because of the
pending motions.  (ECF No. 64.)

On July 17, 2020, after the Motions were fully submitted,
Defense Counsel renewed its request to withdraw.  (ECF No. 74.)
Once again, Defense Counsel's letter explained that Plaintiff's
counsel did not object.  On July 20, 2020, Plaintiff filed a
letter acknowledging that Defense Counsel requested leave to
withdraw but raising no objection to the request.  (ECF No. 75.)

Accordingly, Defense Counsel's request to withdraw is now
GRANTED.  Matthew Tracy and the law firm Winget, Spadafora &

Schwartzberg, LLP are hereby terminated from representing Defendant in this action.

**VI.   Conclusion**

For the reasons set forth above, Defendant's motion to dismiss is DENIED; Plaintiff's motion for partial summary judgment is DENIED without prejudice to renew following the close of discovery; and Defense Counsel's request to withdraw is GRANTED.

It is FURTHER ORDERED that Defendant shall have 30 days to appoint new counsel, after which the parties shall promptly proceed to discovery under the supervision of Magistrate Judge Stewart D. Aaron.

The Clerk of Court is directed to terminate the motions docketed at ECF Nos. 47, 50, and 74, and to terminate Matthew Tracy and the law firm Winget, Spadafora & Schwartzberg, LLP from representing Defendant in this action.

**SO ORDERED.**

Dated:   New York, New York
          September 29, 2020

*John F. Keenan*

John F. Keenan
United States District Judge